## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

OLGA RODRIGUEZ,

        Plaintiff,

v.                                      Case No:  2:15-cv-50-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

## OPINION AND ORDER

Plaintiff Olga Rodriguez seeks judicial review of the denial of her claims for a period of Social Security disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").   Plaintiff raises four issues on appeal:   (1) whether substantial evidence supports the Appeals Council's denial of Plaintiff's request for review; (2) whether substantial evidence supports the evaluation of the Administrative Law Judge, M. Dwight Evans (the "ALJ" or "law judge"), concerning Plaintiff's mental impairments; (3) whether substantial evidence supports the ALJ's evaluation concerning medical opinions about Plaintiff's physical impairments; and (4) whether the ALJ's credibility decision is supported by substantial evidence. Because the decision of the Commissioner is supported by substantial evidence, and the Plaintiff has not shown any reversible error, the decision will be affirmed.

## I.

Plaintiff, who was forty-four years old at the time of the administrative hearing, applied for a period of disability, disability insurance benefits and SSI on February 16, 2011, alleging she became disabled and unable to work on February 9, 2009 ("alleged onset date" or "AOD") due to diabetes, hyperlipidemia, high blood pressure and tendonitis. Tr. 107, 209-19, 242, 268. Her applications were denied initially and upon reconsideration. Tr. 113-25, 128-34. Plaintiff can read and write in English, has at least a 9th grade education[1] and previously worked as a deli cutter, sandwich maker, nursery school attendant, commercial cleaner and supervisor. Tr. 83-84, 241-42, 244, 306.

At her request, Plaintiff received a *de novo* administrative hearing on February 25, 2013 before ALJ Evans, during which she was represented by counsel. Tr. 46-98. Plaintiff and a vocational expert (VE) testified at the hearing.[2] *Id.* On May 24, 2013, the ALJ issued a decision finding that Plaintiff is not disabled and denying her claim. Tr. 30-40. At step two, the law judge found that Plaintiff had severe impairments of diabetes mellitus, obesity, hypertension and shoulder pain. Tr. 32. At step three, he concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

---

[1] As discussed, *infra*, in Section III(C), there was conflicting information in the record concerning Plaintiff's level of education. She testified that she had completed only the 9th grade and provided supporting educational records; however, Plaintiff indicated in her application that she completed one year of college. *Compare* Tr. 51, 306 *with* Tr. 242.

[2] Plaintiff, her counsel and the VE appeared in Ft. Myers, FL; and the law judge presided over the hearing by videoconference. Tr. 48.

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ." Tr. 36.   The ALJ concluded that, with her severe impairments, Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).[3]   Tr. 36.   Relying on the VE's testimony, the ALJ ruled that Plaintiff is capable of performing her past relevant work as a deli clerk, nursery school attendant and supervisor, noting this "work does not require the performance of work-related activities precluded by the claimant's residual functional capacity."   Tr. 39.   Alternatively, the ALJ found that assuming Plaintiff is limited to performing only unskilled work as a result of her mental impairments, the VE identified jobs in the national economy she is able to perform, such as sandwich board carrier, marker and surveillance system monitor.   Tr. 39-40. Accordingly, the ALJ ruled that Plaintiff is not disabled through the date of the decision.   Tr. 39-40.   The Appeals Council let stand the decision of the ALJ as the final decision of the Commissioner, after considering new evidence submitted by Plaintiff.   Tr. 1-5.   Plaintiff filed an appeal in this Court on January 27, 2015.   Doc. 1.

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.   20 C.F.R. § 404.1567(b).

## II.

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The district court must consider the entire record, including new, chronologically relevant evidence submitted to the Appeals Council for the first time, in determining whether the Commissioner's final decision is supported by substantial evidence. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1265 (11th Cir. 2007); 20 C.F.R. § 404.970(b). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560

(11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).

## III.

### A. *Whether substantial evidence supports the Appeals Council's denial of Plaintiff's request for review.*

Plaintiff first argues that the Appeals Council improperly denied her request for review because new material evidence concerning Plaintiff's mental impairments was submitted to the Appeals Council that was not "associated with the administrative record," warranting remand.[4]   Doc. 25 at 7-28.   Specifically, Plaintiff

---

[4] The Commissioner acknowledges that "Plaintiff correctly notes the Appeals Council

submitted a psychological evaluation of Plaintiff conducted on August 13, 2013, nearly four months after the ALJ's decision, by examining psychologist Christine Needham, a licensed school psychologist.   Tr. 1-2, 587-93.   The Appeals Council considered the additional evidence and found the new evidence concerned a time period after the ALJ's May 24, 2013 decision and thus did not affect the decision whether Plaintiff was disabled as of the ALJ's decision.   Tr. 2.   The Commissioner responds that the Appeals Council properly evaluated the evidence and correctly determined it is not chronologically relevant to the ALJ's decision.   Doc. 28 at 4-6. The Court agrees.

"[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."   *Ingram*, 496 F.3d at 1262 (citation omitted).   Under the Social Security regulations, a claimant is entitled to remand for consideration of newly-discovered evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."   42 U.S.C. § 405(g).   "Thus, the claimant must show that (1) the evidence is new and noncumulative; (2) the evidence is material such that a reasonable probability exists that the new evidence would change the administrative result; and (3) there is good cause for the claimant's failure to submit

---

failed to exhibit this new evidence with the administrative record (Doc. 25 at 8). *See* Hearings, Appeals, and Litigation Law Manual (HALLEX) § I-3-5-20(A)(3), 1993 WL 643143, at *3 (S.S.A.). The Commissioner's counsel inadvertently overlooked this issue."   Doc. 28 at 4. Subsequently, the Commissioner filed a supplemental certified administrative record, which was made part of the record and is before this Court.   *See id.*; Doc. 26.

the evidence at the appropriate administrative level." *Leiter v. Comm'r of Soc. Sec. Admin.*, 377 F. App'x 944, 950 (11th Cir. 2010) (citing *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998)).   For evidence to be "new and noncumulative," it must relate to the time period on or before the date of the ALJ's decision.   *See* 20 C.F.R. § 404.970(b).   The Commissioner's policies state that new evidence is chronologically relevant only if it is "dated before or on the date of the ALJ decision, or [] post-dates the ALJ decision but is reasonably related to the time period adjudicated by the ALJ." *See* HALLEX § I-3-3-6(B)(3), 1993 WL 643129 (S.S.A.); 20 C.F.R. §§ 404.970(b); 416.1470(b).   Thus, the Eleventh Circuit has held that "[e]vidence of a deterioration of a previously-considered condition may subsequently entitle a claimant to benefit in a new application, but is not probative of whether a person was disabled during the specific period under review."   *Leiter*, 377 F. App'x at 950 (citing *Wilson v. Apfel*, 179 F.3d 1276 (11th Cir. 1999)).

Dr. Needham's report consisted of the following: a brief summary of records dated April 25, 2013 from Lee Mental Health Center, in which Plaintiff was diagnosed with depressive disorder, not otherwise specified; background information summarizing Dr. Needham's interview with Plaintiff; a mental status examination; intelligence testing using the Wechsler Abbreviated Scale of Intelligence; and Achievement Testing.   Tr. 587-89.   The testing revealed that Plaintiff's full scale IQ is 87 (88 verbal and 89 performance), which is in the low average range; her reading level is in the low average range; her sentence comprehension is at the third to fifth grade level; and her spelling and math abilities are borderline.   Tr. 588-89.   The psychologist opined that Plaintiff suffers from single episode depression, without

psychosis, due to her medical condition, reading and math disabilities and a disorder of written language; and she has a GAF of 40.   Tr. 589.

Plaintiff argues that the new evidence is chronologically relevant because Dr. Needham's opinion was based, in part, on Plaintiff's "medical history and treatment records," contending that Dr. Needham reviewed medical evidence of record "during the relevant period."   Doc. 25 at 8.   As noted, however, Dr. Needham only briefly discussed Plaintiff's treatment at Lee Mental Health in the Vista Program on one occasion, noting:

> When [Plaintiff] was admitted to the hospital she stated that, "I asked the doctor in the hospital to tell me a place to get treatment for depression and they transferred me here.   I don't need to be here at Vista.   I am not suicidal or homicidal, I'm just depressed. I've been taking medication for my depression from my doctor but I just need a psychiatrist who can adjust my medication because I don't think it is right.

Tr. 587.   Clearly, the record reveals other mental health evaluations, which the ALJ discussed.   *See, e.g.,* Tr. 33-35 (discussing psychological evaluation in 2011 with Dr. Nancy Kelly and psychological evaluation with Dr. Cheryl Kasprzak in January 2013).   More importantly, as noted by the Commissioner, Dr. Needham's opinion is based on the testing and procedures she performed at that time, and the report did not note a retroactive date to which her findings might apply.   Doc. 28 at 6, Tr. 587-93.   Thus, the opinion did not satisfy all three required elements – new, material and chronologically relevant – and therefore the Appeals Council was not required to consider it.   Clearly, Plaintiff complained of depression prior to the ALJ's decision. Thus, any evidence showing an exacerbation of her condition is not probative to the

disability decision at issue.   Here, it is clear from the Appeals Council's decision that it considered the "seven pages of [new] records from Christine Needham, EdD," submitted by the Plaintiff yet determined that "new information" from August 27, 2013 "does not affect the decision about whether [Plaintiff was] disabled beginning on or before May 24, 2013," the date of the ALJ's decision, and denied review.   The Council was required to do no more.

> B. *Whether substantial evidence supports the ALJ's evaluation concerning the severity of Plaintiff's mental impairments and whether they were medically equivalent to Listing 12.05.*

> i. *Severity of mental impairments*

Plaintiff first states that the ALJ erred in not finding her mental limitations of depression and borderline intellectual functioning to be severe, asserting substantial evidence supports otherwise.   Doc. 25 at 10-14.   Defendant responds that the ALJ properly applied a psychiatric review technique to assess the severity of Plaintiff's alleged mental impairments and found that they were not severe.   Doc. 28 at 7-8; Tr. 35.   The Court, having reviewed the record, the applicable law and the decision of the ALJ, agrees with the Commissioner.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment.   20 C.F.R. § 404.1520(a)(4)(ii). Plaintiff bears the burden of establishing that her impairments are severe and prevent the performance of her past relevant work.   *Bowen v. Yuckert*, 482 U.S. at 146 n.5.   A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities.

20 C.F.R. § 404.1520(c).   "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The Social Security Regulations provide that an "impairment or combination of impairments is not severe if it does not significantly limit your . . . . mental ability to do basic work activities."   20 C.F.R. § 404.1521(a).   Basic work activities mean "the abilities and aptitudes necessary to do most jobs."   *Id.* § 404.1521(b).   Examples of mental requirements set forth in the regulations include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work-setting.   *Id.* § 404.1521(b)(3)-(6).

In order to evaluate the severity of a mental impairment, the Commissioner's regulations require the application of a "special technique," which the ALJ applied in this case.   20 C.F.R. § 404.1520a; *see* Tr. 35.   Under the special technique, the ALJ will rate the degree of functional limitation in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.   20 C.F.R. § 404.1520a(c)(3).   The degree of limitation in the first three areas are rated on a five point scale of none, mild, moderate, marked, and extreme; and the fourth area is rated as none, one or two, three, four or more.   20 C.F.R § 404.1520a(c)(4).   Once the degree of limitation in each area is determined, if the degree of limitation in the first three functional areas is none or mild and the

fourth area is none, the ALJ generally will find, as he did here, the impairment is not severe, unless the evidence otherwise indicates more than a minimal limitation in ability to do basic work activities.   20 C.F.R. § 404.1520a(d)(1).   The ALJ's decision must incorporate findings and conclusions based on the special technique.   20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined that the only severe impairments Plaintiff suffered from were physical limitations: diabetes mellitus, obesity, hypertension and shoulder pain.   Tr. 32.   The ALJ specifically considered Plaintiff's alleged mental impairment of major depressive disorder and determined it does not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities.   Tr. 35.   The ALJ applied the special technique and considered the four broad functional areas set out in the regulations for evaluating mental disorders.   *Id.*   The ALJ found only mild limitation in Plaintiff's activities of daily living; social functioning; and concentration, persistence or pace.   With respect to her activities of daily living, the ALJ noted that at or around the time of Plaintiff's alleged onset, reports showed Plaintiff was able to prepare simple meals, perform household chores, shop and handle finances.   *Id.*   He also noted that in August 2012, Plaintiff indicated that her daily activities were normal, and in early 2013 that she still could prepare simple meals and take care of her daily needs independently.   *Id.*

In finding mild limitation in Plaintiff's social functioning, the ALJ also noted around the time of the AOD Plaintiff could drive, shop and attend church.   In 2013,

Plaintiff reported weekly visits with her mother, regular contact with other family members by telephone and that she gets along well with her family.   *Id.*

In terms of concentration, persistence or pace, the ALJ found that repeated examinations of Plaintiff showed her to have adequate memory.   *Id.*   She also retained the ability to engage in a "wide range of daily activities on a regular basis," and no "credible" examination indicated Plaintiff had diminished attention or concentration.   *Id.*   Finally, the ALJ found no episodes of decompensation of extended duration.   *Id.*   Based on these findings, the ALJ determined that Plaintiff's mental impairment was non-severe.   Tr. 35.

The ALJ's conclusion is supported by the record, which the ALJ further discussed when assessing Plaintiff's ability to work despite her mental limitations. Tr. 38-39.   The ALJ examined and discussed records from 2010 to 2013, and found that "objective observation does not support the claimant's subjective complaints, and her condition appeared to be well managed with a proper medication and treatment." Tr. 37.   He noted that an examination in December 2010 by Alphonsus Zohlandt, M.D., was "unremarkable, and Plaintiff's appearance was normal, her mood euthymic and her affect and thought content normal.   *Id.* at 37-38, Tr. 312.   In June 2011, Plaintiff's mental examination by Nancy Kelly, Psy.D., noted only a "dysthymic mood."   Tr. 38, 350.   Dr. Kelly diagnosed Plaintiff with depressive disorder, not otherwise specified, and noted her prognosis was "fair," given Plaintiff's cognitive ability.   Tr. 351.   The ALJ further noted that psychiatric notes from examinations in January and April 2012 likewise were "unremarkable."   Tr. 38, *see* Tr. 439-48.

The ALJ noted that although in June 2012 Plaintiff's mood was depressed (Tr. 38, 436), the following month Plaintiff reported improvement in her depression with proper treatment (Tr. 570); and her examination in August 2012 reported she had a euthymic mood, normal affect and normal thought content.   Tr. 563.   The ALJ discussed an examination in January 2013 in which Plaintiff appeared alert, oriented with unimpaired judgment and no memory impairment and with normal affect.   Tr. 38, 530.

The ALJ stated that a detailed psychiatric examination performed by psychologist Cheryl Kasprzak in January 2013, discussed in more detail later in this opinion, showed limitations greater than Plaintiff's abilities otherwise indicated.   Tr. 38, 551.   Dr. Kasprzak concluded that Plaintiff's response patterns resulted in underestimation of her true abilities.   Tr. 551.   Nonexamining psychologists, Jeannie Nunez and Pauline Hightower, each opined that Plaintiff did not have a severe mental impairment; and the ALJ gave these opinions great weight, as he found them to be consistent with the record as a whole.   Tr. 38-39, 352-64, 367.   Plaintiff also argues that treatment records from April 25, 2013 from Lee Mental Health show she had a severe mental impairment, and the ALJ failed to discuss these records in his decision although they were submitted after the hearing but before the ALJ rendered his decision.   Doc. 28 at 11.   Although the Court agrees that the ALJ's failure to discuss these records was error, any such error was harmless; as these records do not show additional limitations, and the ALJ properly discussed Plaintiff's mental condition "as a whole."   *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555,

558 (11th Cir. 2015).   These records reveal Plaintiff was seeking adjustment to her medications, and she was found to have had normal mental functioning with euthymic mood, and was discharged the same day.   Tr. 581.

Accordingly, the Court finds that the ALJ's decision at step two is supported by substantial evidence in the record.   Plaintiff has submitted no evidence of severe mental limitations because of her depression or borderline intellectual functioning. *See* 20 C.F.R. § 404.1521(a) (an impairment is not severe if it does not significantly limit your physical or mental ability to do basic work activities).   Furthermore, no doctor has opined that Plaintiff's mental limitations are so debilitating as to preclude Plaintiff from working.   Rather, the record shows the opposite.[5]   *See Wind v. Barnhart*, 133 F. App'x 684, 690-91 (11th Cir. 2005) (finding that ALJ did not err in finding that plaintiff's obesity was not a severe impairment where there was no evidence it affected plaintiff's ability to perform work activities).

Additionally, the ALJ found in Plaintiff's favor at step two of the sequential evaluation process by finding that she had multiple severe impairments.   Tr. 32. The ALJ then proceeded with the other steps of the sequential evaluation process. Tr. 36-40.   As the Eleventh Circuit has stated, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).   Thus, the ALJ's findings were not in error.

---

[5] Moreover, the ALJ accounted for Plaintiff's mental impairments in his alternative findings in step five by limiting Plaintiff to unskilled work.   Tr. 39-40.

*ii.  Listing 12.05(C)*[6]

As for Plaintiff's argument that the ALJ should have found that Plaintiff's mental impairment, specifically her borderline intellectual functioning with an IQ of 72, was medically equal to Listing 12.05(C) (Doc. 25 at 10-11), the Court finds that Plaintiff has not met her burden, as she is required to do.   *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).   The listings describe impairments that the Commissioner considers severe enough to prevent a person from doing "any gainful activity, regardless of his or her age, education, or work experience."   *See* 20 C.F.R. §§ 404.1625(a), 416.925(a).   If an adult's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. . . ." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing *Bowen,* 482 U.S. at 141).   The Eleventh Circuit has described how the standard is met or equaled:

> In order to *meet* a listing, the claimant must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement. A diagnosis alone is insufficient. [] In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings.

*Wilkinson ex rel. Wilkinson v. Bowen,* 847 F.2d 660, 662 (11th Cir. 1987) (citing 20 C.F.R. § 416.925(c)-(d)).   The burden of establishing that a claimant's impairments meet or equal a listing rests with the claimant, who must produce specific medical findings that satisfy all the criteria of a particular listing.   20 C.F.R. § 404.1520(a)(4).

---

[6] As noted by the Commissioner (Doc. 28 at 11 n.7), Plaintiff only appears to challenge whether her impairments equaled Listing 12.05(C); accordingly, the Court only will address this issue.

If Plaintiff contends that an impairment meets a listing, as she does here (Doc. 25 at 10-11), she bears the burden of "present[ing] specific medical findings that meet the various tests listed under the description of the applicable impairment." *Wilkinson*, 847 F.2d at 662.   In doing so, Plaintiff must have a diagnosed condition that is included in the listings.   *Id.*   Diagnosis of a listed impairment, however, is not enough; as the claimant must also provide objective medical reports documenting that her impairment meets the specific criteria of the applicable listing.   *Id.*; *accord Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).   Further, "[a]n impairment that manifests only some of [the specific] criteria [of the applicable impairment], no matter how severely, does not qualify."   *Sullivan*, 493 U.S. at 530.

The introductory material to the mental disorders listings clarifies Listing 12.05, stating:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings.   Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability.   It also contains four sets of criteria (paragraphs A through D).   If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.   Listing 12.05 provides, that a claimant is disabled if he or she meets the following criteria:

> 12.05 Intellectual disability: intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, *or* D are satisfied.

. . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

. . .

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (emphasis added).   Accordingly, in order to meet Listing 12.05, "a claimant must at least[:] 1) have significantly subaverage general intellectual functioning; 2) have deficits in adaptive [functioning]; and 3) have manifested deficits in adaptive [functioning] before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Additionally, a claimant must meet one of the four sets of criteria found in 12.05A, B, C, or D, in order to show that his or her impairments are severe enough to meet or equal Listing 12.05.   20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A).

In *Hodges v. Barnhart*, the Eleventh Circuit held that "there is a presumption that mental retardation[7] is a condition that remains constant throughout life" and would apply to a claimant since the onset date of disability.   276 F.3d 1265, 1266 (11th Cir. 2001).   In *Hodges*, the plaintiff acknowledged the lack of I.Q. evidence before the age of 22, but the court agreed with the plaintiff that "I.Q. tests create a rebuttable presumption of a fairly constant I.Q. throughout her life."   *Id.* at 1268. The court also noted that "a claimant meets the criteria for presumptive disability

---

[7] The Court notes that currently Listing 12.05 uses "Intellectual disability" in place of "Mental retardation," amended on August 1, 2013.   *See* 78 Fed. Reg. 46,499, 46,501.   The listing, however, has not substantively changed.   *Id.*

under Listing 12.05(c) when the claimant presents a valid I.Q. score of 60 to 70 and evidence of additional mental or physical impairment." *Id.* at 1269. However, "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Id.* (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)).

The Court concludes that substantial evidence supports the ALJ's decision that, despite Plaintiff's IQ score, she did not meet or equal the criteria of Listing 12.05(C). First, Plaintiff's full scale IQ score of 72 is not sufficiently low to be "equal in severity" to Listing 12.05(C). 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C. Second, the record supports the conclusion that, due to her limited effort and possible chronic pain during the examination, Plaintiff's IQ score was not valid and underestimated her actual level of functioning. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(6)(a) (noting that the "narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation"). Here, as noted, Dr. Kaspzak opined that the results of Plaintiff's IQ score was "an underestimation" of Plaintiff's capability, as Plaintiff frequently hesitated between 30 and 60 seconds before responding, even when asked about her personal background, and often responded she could not remember or did not know. Tr. 551. As to this issue, Dr. Kaspzak further opined:

> Although chronic pain may certainly be a factor in [Plaintiff's] process speed[,] individual subtest scaled scores and composite score, the aforementioned behaviors and verbalizations seemed to be in excess, repeatedly throughout the evaluation.

*Id.*  The ALJ gave Dr. Kaspzak's opinion significant weight.  Tr. 38.  Third, the ALJ did not find Plaintiff's testimony to be credible concerning the extent of her mental impairment and its effect on her ability to work.  *Id.*  Although the ALJ noted that Plaintiff appeared very sympathetic and described "significant reports of depression . . . the fact is that the claimant's allegations are not supported [by] corresponding medical treatment records or objective observations."  *Id.* (discussing, e.g., Dr. Kaspzak's opinion that "claimant was not limited in understanding, remembering, and carrying out instructions or making judgments about work related decisions [and that c]laimant also retained the ability to interact appropriately with supervisors, coworkers, the public, and respond to changes in a routine work setting").  Plaintiff cannot rely solely on her own testimony to show her impairments meet or equal a listing, but only on an acceptable medical source.  *See* 20 C.F.R. §§ 404.1508, 404.1525.  Fourth, even though Plaintiff was diagnosed with borderline intellectual functioning, this diagnosis alone was insufficient to meet the criteria of Listing 12.05(C).  Wilkinson, 847 F.2d at 662; *Smith v. Comm'r of Soc. Sec.*, 535 F. App'x 894, 897-98 (11th Cir. 2013), citing 20 C.F.R. § 416.925(d).  Given that Dr. Kaspzak, who administered the tests, concluded that Plaintiff's IQ score underestimated her intelligence, and based on Plaintiff's other treatment records, the ALJ properly determined she did not meet Listing 12.05C.  *See Smith*, 535 F. App'x at 897; *Popp*, 779 F.2d at 1500 (holding that the ALJ was not required to find claimant was mentally retarded based on IQ test but was required to examine the results "in

conjunction with other medical evidence and the claimant's daily activities and behavior").

    *C. Whether substantial evidence supports the ALJ's evaluation concerning medical opinions about Plaintiff's physical impairments.*

    Plaintiff contends the ALJ did not properly assess Plaintiff's RFC by failing to provide adequate reasons for rejecting the medical opinions of Jacob Glock, M.D., Dr. Kasprzak and Dr. Zohlandt.   Doc. 25 at 14-16.   The Commissioner responds that the ALJ properly considered all record evidence, including medical opinions, and gave the appropriate weight to the opinions in accordance with the regulations.   Doc. 28 at 17.   The Court agrees.

    When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.   20 C.F.R. § 404.1527(c)(1)-(6).   Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ."   20 C.F.R. § 404.1527(c)(2).   Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a

whole.   SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996).   "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

If the opinion of a treating physician as to the nature and severity of a claimant's impairment is supported by acceptable medical evidence and is not inconsistent with other substantial evidence of record, the treating physician's opinion is entitled to controlling weight.   SSR 96-2p; 20 C.F.R. § 404.1527(c).   By contrast, if the ALJ does not afford controlling weight to a treating physician's opinion, he must clearly articulate the reasons for doing so.   *Winschel*, 631 F.3d at 1179.   Although the regulations require that the ALJ consider all factors set forth in 20 C.F.R. § 404.1527(c), the ALJ is not required to expressly address each factor so long as he demonstrates good cause to reject the opinion.   *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert

opinion evidence of nonexamining sources by the ALJ, but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.   SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2).   Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialists.   20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).

At the request of the Division of Disability Determination, Dr. Glock examined Plaintiff on January 2, 2013.   Tr. 527.   With respect to her physical impairments, Plaintiff complained of right shoulder pain and diffuse body pain in her hands and feet, which had begun about 10 years earlier.   *Id.*   On examination, Dr. Glock found Plaintiff's gait was normal except for a slight limp because of an infection in her right toe, she was able to squat about 50% of full, she could dorsiflex her spine with about 50% restriction, her stance was normal, she used no assistive device, and she needed no help changing for her examination.   Tr. 529.   He further found Plaintiff had a full range of motion in her cervical and lumbar spine and no abnormalities in her thoracic spine.   *Id.*   With respect to her shoulders, Dr. Glock found Plaintiff had a full range of motion in her left shoulder; and restricted forward motion in her right shoulder to 75 degrees, restricted abduction to 75 degrees and restricted adduction to 15 degrees.   *Id.*   He found a full range of motion in all joints but with some pain, but no evidence of musculoskeletal abnormalities.   Tr. 530.   Notwithstanding these

relatively mild findings, Dr. Glock opined that Plaintiff could lift no more than ten pounds occasionally, sit or stand for no more than one hour, or walk for more than thirty minutes.   Tr. 535-36.   She could occasionally reach with her right hand or operate controls with her right foot, occasionally climb, balance, stoop, kneel, crouch or crawl.   Tr. 537-38.   Dr. Glock further opined that Plaintiff could not use public transportation, climb steps, walk a block at a reasonable pace, travel without a companion or perform individual activities, such as shopping.   Tr. 540.

The ALJ gave no weight to Dr. Glock's consultative opinion, finding it was unsupported by the physician's own notes, Plaintiff's activities of daily living and other record evidence.   Tr. 38, *see* 20 C.F.R. §§ 1527(c)(4), 1528(c)(4), 416.927(c)(4). The Court finds substantial evidence supports the ALJ's decision.   With respect to her activities of daily living, Plaintiff reported in her function report that she cooked daily for up to one hour, cleaned a little at a time throughout the day, and shopped twice weekly for up to one hour.   Tr. 256-67.   In August 2012, Plaintiff reported to her treating physician, Colette Haywood, M.D., that her activities of daily living were normal and she had no physical disability.   Tr. 561.   An ALJ may reject a medical opinion based, in part, on its inconsistency with the claimant's own testimony. *Phillips*, 357 F.3d at 1241.   Dr. Glock's opinion also was inconsistent with other record evidence, as noted by the ALJ.   Tr. 32-33 (discussing Plaintiff's treating physicians at Family Health Centers, including Dr. Zohlandt, routinely documented Plaintiff's normal physical findings); *see, e.g.,* Tr. 312, 315, 325, 339, 343, 441, 445

(findings of normal musculoskeletal functioning).   The ALJ may reject a physician's opinion when the evidence supports a contrary conclusion.   *Lewis*, 125 F.3d at 1440.

Plaintiff also briefly argues that the ALJ erred by not including limitations from the opinions of Dr. Zohlandt or Dr. Kasprzak.   Doc. 25 at 16.   As noted, however, Dr. Zohlandt's examination findings were normal, supporting the ALJ's finding of no disability.   *See, e.g.,* Tr. 311-13.   Similarly, examining psychologist Dr. Kasprzak noted that Plaintiff's response patterns resulted in underestimation of her true abilities, she was not limited in remembering, understanding and carrying out instructions or making judgments about work-related matters.   Tr. 543.   The ALJ gave this opinion significant weight.   Tr. 38.

Without complete citation to the record or to any authority, Plaintiff asserts that the ALJ erred by asking the VE to consider a hypothetical individual with the educational equivalence of "one year of college," arguing that Plaintiff has only a 9th grade education.   Doc. 25 at 15; *see* Tr. 84.   The only records cited by Plaintiff to support her argument indeed show educational records through 9th grade, from 1986. *See, e.g.*, Tr. 305.   Plaintiff also testified in the administrative hearing that the highest level of education she completed was 9th grade.   Tr. 51.   Elsewhere in the record, however, Plaintiff indicates in her application she completed one year of college in 1994.   Tr. 242.   Here, the ALJ determined at step four that Plaintiff could perform her past relevant work as a deli clerk, nursery school attendant and supervisor.   Tr. 39.   Alternatively, limiting Plaintiff to unskilled work, the ALJ

found at step five that Plaintiff could perform her past work as a deli clerk and, in addition, a sandwich board carrier, marker and surveillance system monitor.   Tr. 40.

For this issue, the Court must determine whether substantial evidence supports the ALJ's determination that Plaintiff failed to meet the fourth criteria of the sequential evaluation process.   At the fourth step, the claimant bears the burden of demonstrating that she cannot return to her past relevant work. *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007) (citing *Lucas v. Sullivan,* 918 F.2d 1567, 1571 (11th Cir.1990)).   The ALJ assesses the claimant's RFC to determine whether the claimant can perform past relevant work despite her impairment.   *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).   To support a conclusion that the claimant is able to return to her past relevant work, the ALJ must consider all the duties of that work and evaluate the claimant's ability to perform them in spite of her impairments. *See Lucas,* 918 F.2d at 1574.   An ALJ may consider a VE's opinion when making this determination.   20 C.F.R. § 404.1560(b)(2). "In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart,* 284 F.3d at 1227 (citation omitted).   Errors may be harmless if they do not prejudice the claimant. *See Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir.1983).

The regulations define an education of 7th grade through the 11th grade as a "limited education," meaning the "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs."   20 C.F.R.

§ 404.1564(b)(3).   The VE identified at least three of Plaintiff's past jobs, sandwich maker, deli clerk and cleaner/maid, as unskilled, e.g., having an SVP of 2. [8]   Tr. 83.

Here, in both step four and step five the ALJ determined that Plaintiff could perform unskilled jobs (identifying deli cutter as "unskilled work").   Tr. 39-40.   Even assuming Plaintiff only completed the 9th grade, for which the record is in conflict, she would have the educational ability under the regulations to perform the work identified by the ALJ.   *See* 20 C.F.R. § 404.1564(b)(3).   Moreover, the record shows that Plaintiff in fact performed the work of a deli clerk for a number of years.   Tr. 244.   Therefore, Plaintiff was not prejudiced by any error in the hypothetical question to the VE, as such error was harmless.   *Battle*, 243 F. App'x at 522.

As to Plaintiff's argument that the ALJ improperly limited Plaintiff's attorney's questioning during the hearing, the Court has reviewed the transcript in detail and finds no error in the ALJ's request to control the hearing testimony and ensure that counsel for Plaintiff ask only appropriate and relevant questions of the VE.   *See* Tr. 87-90.   As noted by the Commissioner, the ALJ has the discretion to do so.   Doc. 28 at 20 (citing HALLEX, § I-2-6-60, 1993 WL 751900, at *1 (S.S.A.)).   Accordingly, the Court finds that substantial evidence supports the ALJ's decision as to Plaintiff's physical limitations, and he properly considered all record evidence, including medical opinions, and gave the appropriate weight to the opinions in accordance with the regulations.

---

[8] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2."   SSR 00–4p, 2000 WL 1898704 at *3.

*D. Whether the ALJ's credibility decision is supported by substantial evidence*

Plaintiff's final argument is that the ALJ erred in his credibility assessment of Plaintiff and did not adequately explain his reasons for his adverse credibility finding. Doc. 25 at 16.   The Commissioner asserts that the ALJ properly found Plaintiff's statement were not entirely credible based on Plaintiff's own reports and the medical records.   Doc. 28 at 22.

In *Holt v. Sullivan,* 921 F.2d 1221 (11th Cir.1991), the Eleventh Circuit articulated the "pain standard," which applies when a claimant attempts to establish a disability through her own testimony of pain or other subjective symptoms. 921 F.2d at 1223. The pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*   If a claimant testifies as to her subjective complaints of disabling pain and other symptoms, as Plaintiff did here, the ALJ must clearly "articulate explicit and adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms. *Foote,* 67 F.3d at 1561-62. "Although this circuit does not require an explicit finding as to credibility . . . the implication must be obvious to the reviewing court." *Id.* (citation omitted). The credibility determination does not need to cite "'particular phrases or formulations'" but it cannot merely be a broad rejection which is "'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Id.* at 1561 (quoting *Jamison v. Bowen,*

- 27 -

814 F.2d 585, 588-90 (11th Cir.1987)).   As stated in SSR 96-7p:   "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statement."

The ALJ summarized Plaintiff's testimony at the administrative hearing.   Tr. 36-37.   Plaintiff testified that she attended high school through the ninth grade.   Tr. 51.   She previously worked in the Publix deli for fifteen years slicing meat and making sandwiches, but quit her job in about 2011 because she was depressed and could not be friendly to customers and because of the pain in her right shoulder, which interfered with her ability to slice meat, as she is right handed.   Tr. 52-54.   Plaintiff testified she could not afford to see a specialist for her shoulder pain or for her depression.   Tr. 53.   She cried throughout the hearing.   *Id.*, Tr. 37.   Before working at Publix, Plaintiff briefly worked as a housekeeper and housekeeper supervisor at a hotel, and also worked in a daycare center.   Tr. 54, 222.   Plaintiff testified she does not drive, cook, clean, do laundry or take out the trash; her daughter does those things for her.   Tr. 54.   She stated that since 2011 she has daily right shoulder pain two to three times per day, in which she has to lay down for up to one hour each time, and she has been depressed every day since 2011 and wants to stay in bed.   Tr. 55.   She lies down to relieve her shoulder pain and takes pain medication.   Tr. 55-56.   Her diabetes causes poor vision and sores on her feet, which causes significant pain and precludes her from wearing closed-toe shoes.   Tr. 56.   Plaintiff testified she also cannot afford to see a specialist for her diabetes.   56-57.

After reviewing Plaintiff's testimony, the ALJ held:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

Tr. 36.

Here, as outlined earlier in this opinion, the ALJ articulated explicit and adequate reasons for discounting Plaintiff's self-reports and testimony, as is required in this circuit. The ALJ based his credibility determination on the medical evidence of record, which was essentially normal, as discussed above, contrary to Plaintiff's complaints of disabling pain and depression. Tr. 37. *See Dyer*, 395 F.3d at 1211.

With respect to her physical impairments, the ALJ noted that repeated examinations and objective observation by her medical providers and Plaintiff's activities of daily living do not support her subjective complaints. Tr. 37. Beginning with Plaintiff's AOD, the ALJ noted that examinations at that time were largely "unremarkable with normal reflexes, neurological function, gait and balance." *Id.* Examination reports by Dr. Zohlandt and other physicians from late 2010 throughout 2012 for the most part showed that Plaintiff had normal musculoskeletal functioning, and Plaintiff reported she had no physical disability as of August 2012. *See, e.g.,* Tr. 312, 315, 325, 339, 343, 441, 445, 561. Such mild findings were substantial evidence to support the ALJ's decision that that Plaintiff's impairments were not as severe as she alleged. See *Dyer*, 395 F.3d at 1211 (affirming an adverse

credibility finding based, in part, on mild examination findings); *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984) (same).

The ALJ also noted that the record showed Plaintiff's diabetes and hypertension were well controlled when Plaintiff complied with her treatment, observing that Plaintiff had a "history of medication noncompliance." Tr. 37. Plaintiff contends the ALJ erred in considering Plaintiff's improvement with medication arguing her blood sugar was not controlled and that the ALJ should have considered that Plaintiff was unable to afford treatment. Doc. 25 at 17-18. Plaintiff's argument is not persuasive. The ALJ did not find Plaintiff's diabetes was well-controlled in general. Tr. 37. Instead, he found Plaintiff's noncompliance with her medication was another factor to discount her credibility because she was noncompliant even though her medication would have provided her with relief. *Id.* The ALJ is only required to consider that a claimant is unable to afford treatment when noncompliance is the sole basis for an adverse credibility finding. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). That was not the case here.

Considering Plaintiff's activities of daily living, the ALJ also noted that Plaintiff reported that she could prepare simple meals, perform household chores, drive a car, shop, attend church and handle financial transactions, and that such activities were inconsistent with her complaints. Tr. 37. The ALJ properly may consider a claimant's activities of daily living in determining her credibility with respect to symptoms and pain. *See* 20 C.F.R. §§ 404.1529, 416.929.

With respect to Plaintiff mental condition, the ALJ found that objective observations of her medical providers do not support her subjective complaints, and her depression symptoms appeared to approve with proper medication.  Tr. 37-38 (discussing such examinations from 2010 through 2013).  The ALJ also addressed Dr. Kasprzak's opinion, discussed in more detail above, that Plaintiff's response patterns during her examination and testing resulted in an underestimation of Plaintiff's true abilities.  Tr. 38, 551.  The ALJ noted he agreed with Dr. Kaspzak's assessment; and thus, he discounted the "subpar findings of her exam."  Tr. 38. This evidence further supports the ALJ's determination that Plaintiff's symptoms were not as serious as she alleged.  *See De Olazabal v. Soc. Sec. Admin., Comm'r*, 579 F. App'x 827, 831 (11th Cir. 2014) (holding that the appellant's subjective complaints were undermined, in part, by her symptoms being controlled with medication); *Dyer*, 395 F.3d at 1212 (same).

In summary, the ALJ considered Plaintiff's activities of daily living, her reports, and the findings of her medical providers and concluded that Plaintiff's subjective complaints were inconsistent with the medical record.  The Court thus finds the ALJ adequately explained his reasons.  *See Dyer*, 395 F.3d at 1213, quoting *Wilson*, 284 F.3d at 1226 (noting the "ALJ made a reasonable decision to reject [the claimant's] subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so").

## IV.

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence, and the ALJ applied the proper legal standards in doing so.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **AFFIRMED**.

2.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 11th day of July, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record